**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 16-25-DLB-JGW**

**ROBERT E. SPARKS**                                                                  **PLAINTIFF**

vs.                          **MEMORANDUM OPINION AND ORDER**

**FIDELITY CORPORATE REAL**                                              **DEFENDANTS**
**ESTATE, INC. and THOMAS KINNEY**

**************************

## I.      Introduction

Defendants Fidelity Corporate Real Estate, Inc. and Thomas Kinney move for partial

dismissal of Plaintiff Robert Sparks's Complaint (Doc. # 1-1), in which he pleads several

claims arising from alleged violations of the Kentucky Civil Rights Act ("KCRA").  Kinney

seeks dismissal of the religious discrimination claim set forth in Count I, arguing that the

KCRA does not allow an individual to be held personally liable for a discrimination claim.

Kinney and Fidelity jointly contend that Count III, which sets forth a claim for wrongful

termination in violation of public policy, is preempted by the KCRA.  Finally, Kinney and

Fidelity ask the Court to strike Sparks's prayer for punitive damages from the Complaint

because the KCRA does not authorize their recovery.  The Court has jurisdiction over this

matter pursuant to 28 U.S.C. § 1332.

## II.      Factual and Procedural Background

Plaintiff Robert Sparks worked for Fidelity Corporate Real Estate, Inc. from 2000 to

2013.  (Doc. # 1-1 at p. 2, ¶ 7-8).  He received several awards for superior performance during this time.  (*Id.* at p. 2-3, ¶ 9).  In 2009, Sparks began working under a new supervisor named Thomas Kinney, who frequently used profanity in the workplace.  (*Id.* at p. 3, ¶ 10-11).  Sparks, a devout Christian, found this language offensive to his religious beliefs.  (*Id.*).  At first, Sparks tried to tolerate Kinney's coarseness, but the problem worsened once Fidelity restructured his department.  (*Id.*).  Sparks suddenly found himself working with others who frequently used profanity.  (*Id.*).

Sparks finally brought his concerns to Kinney's attention in August 2012.  (*Id.* at p. 3, ¶ 12).  He specifically asked that Kinney and others in the department refrain from using foul language.  (*Id.*).  Sparks repeated this request on subsequent occasions, but Kinney was not receptive to it.  (*Id.*).  On May 2, 2013, Sparks notified Kinney via e-mail that he planned to report the matter to Human Resources.  (*Id.*).  He immediately followed through with that promise and filed a complaint with HR.  (*Id.*).  Specifically, Sparks asserted that Kinney's persistent use of profanity violated his religious beliefs.  (*Id.*).  Later that same day, Kinney responded to Sparks' e-mail.  (*Id.* at p. 3, ¶ 14).  He told Sparks that he was aware of the complaint and asked him why he felt the need to involve HR.  (*Id.*).

On May 7, 2013, Sparks arrived at work, only to be told that HR wished to see him.  (*Id.* at p. 4, ¶ 16-17).  When he arrived at the meeting, HR informed him that he was being placed on administrative leave for allegedly threatening another employee.  (*Id.*).  Fidelity fired Sparks three days later.  (*Id.* at p. 4, ¶ 18-19).  Sparks insists that Fidelity's reason for terminating his employment was a pretext for discrimination and retaliation.  (*Id.*).

On January 15, 2016, Sparks filed suit against Fidelity and Kinney in Kenton County Circuit Court.  (Doc. # 1-1).  He asserted three claims: (1) religious discrimination in

violation of KRS § 344.040(1)(a); (2) retaliation in violation of KRS § 344.280(1); and (3) wrongful discharge in violation of the public policy and common law of Kentucky, as embodied in KRS Chapter 344. (*Id*.). Sparks also included a request for punitive damages in his prayer for relief. (*Id*. at 6). Fidelity and Kinney promptly removed the case to this Court, then filed the instant Motion to Dismiss. (Docs. # 1 and 5).

## III.   Analysis

### 1.   Standard of Review

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must also contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, the Court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).

### 2.   Religious Discrimination Under the KCRA

The Kentucky Civil Rights Act is intended to "provide for execution within the state of the policies embodied in the [federal civil rights statutes]."[1] Ky Rev. Stat. Ann. §

---

1) The federal civil rights statutes identified in KRS § 344.020(1)(a) are the Federal Civil Rights Act of 1964 (as amended), Title VIII of the Federal Civil Rights Act of 1968, the Fair Housing Act (as amended), the Federal Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, and the Civil Rights Act of 1991 (as amended).

344.020(1)(a); *see also* Ky. Rev. Stat. Ann. § 344.020(1)(b) (further expressing an intent "[t]o safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age, . . . [or] disability"). Because the "KCRA's stated purpose [is] to effectuate the policies of federal civil rights laws within the Commonwealth, Kentucky courts have always construed violations under the KCRA consistent with federal construction of similar violations under the federal civil rights laws." *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 138 (Ky. 2003).

> Much like Title VII, the KCRA makes it unlawful for an employer:
>
> [t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking.

Ky. Rev. Stat. Ann. § 344.040(1)(a); *compare* 42 U.S.C. § 2000e-2(a) (prohibiting an employer from discriminating on the basis of race, color, religion, sex, or national origin).

In *Wathen v. General Electric Company*, the Sixth Circuit considered whether an employee or supervisor, who does not otherwise qualify as an "employer," could be held individually liable for violations of Title VII.[2] *See* 115 F.3d 400, 404 (6th Cir. 1997); *see also* 42 U.S.C. § 2000e(b) (defining "employer" as a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person"). After

---

2) While this Court is not aware of any Kentucky cases analyzing this precise issue, it finds the logic of the Sixth Circuit's opinion to be consistent with the principles espoused in *McCullough*. The Court also notes that the Kentucky Court of Appeals has cited *Wathen* with approval in a handful of unpublished cases. *See, e.g., Burris v. Gibbs*, No. 2001-CA-001940-MR, 2004 WL 68513, at *1 (Ky. Ct. App. Jan. 16, 2004).

thoroughly examining the statutory scheme and remedial provisions of Title VII, the Sixth Circuit answered this question in the negative. *Id.* at 404-05. "Because KRS Chapter 344 mirrors Title VII," the Sixth Circuit found its holding to be "equally applicable to KRS Chapter 344." *Id.* at 405.

In Count I of his Complaint, Sparks seems to claim that Kinney discriminated against him on the basis of religion.[3] (Doc. # 1-1 at 4). Because Kinney was Sparks's supervisor at Fidelity, rather than his employer, this claim reads as an attempt to hold Kinney individually liable for religious discrimination. However, as *Wathen* makes clear, a supervisor cannot be held individually liable for such conduct. *See* 115 F.3d at 404. Sparks not only concedes this point, he disclaims any intent to plead such a claim. (Doc. # 6 at 8). Accordingly, to the extent that Sparks has unintentionally plead a claim for religious discrimination against Kinney in Count I, that claim must be dismissed.[4]

### 3.   *Common Law Wrongful Discharge in Violation of Public Policy*

"The tort of wrongful discharge of a 'terminable-at-will' employee is a relatively recent development, having arisen out of carefully crafted exceptions to the common law doctrine that 'an employer may discharge his at-will employee for good cause, no cause, or for a

3) In Count I, Sparks initially refers to Fidelity only. (Doc. # 1-1 at p. 4, § 21). However, he later states that "*Defendants'* acts were undertaken willfully, wantonly, maliciously and in reckless disregard of Plaintiff's rights, justifying the imposition of punitive damages." (*Id.* at p. 4, § 23) (emphasis added). Sparks's use of the plural in this last paragraph is likely the source of the parties' confusion.

4) As both parties recognize, the Court's ruling as to any claim of religious discrimination against Kinney does not preclude Sparks from asserting a retaliation claim against Kinney. (Docs. # 5 at 3; 6 at 8). After all, the KCRA's retaliation provision does not mirror the analogous federal provision in Title VII. *Compare* Ky. Rev. Stat. Ann. § 344.280 *with* 42 U.S.C. § 2000e-3(a). Rather, "[t]he Kentucky retaliation statute plainly permits the imposition of liability on individuals." *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000).

cause that some might view as morally indefensible.'" *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 420 (Ky. 2010) (quoting *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984)).  The Kentucky Supreme Court has stated that "only two situations exist where 'grounds for discharging an employee are so contrary to public policy as to be actionable' absent 'explicit legislative statements prohibiting the discharge.'"  *Grzyb v. Evans*, 700 S.W.2d 399, 401-02 (Ky. 1985).  The first is "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id.* (internal quotations omitted).  The second occurs "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment."  *Id.* (internal quotations omitted).

Although the Kentucky Supreme Court has recognized the existence of a common law claim for wrongful discharge in violation of public policy, it has also stated that there are "circumstances in which the doctrine of preemption would block the creation of" such a claim.  *Hill*, 327 S.W.3d at 421.  In *Grzyb*, for example, the plaintiff asserted claims for common law wrongful discharge and violation of his civil rights under the KCRA, both of which were based on allegations of sex discrimination.  *See* 700 S.W.2d at 401-02.  The Kentucky Supreme Court held that the plaintiff had failed to state a claim for wrongful discharge, stating simply that "the claim of sex discrimination would not qualify as providing the necessary underpinning for a wrongful discharge suit because the same statute that enunciates the public policy prohibiting employment discrimination because of 'sex' also provides the structure for pursuing a claim for discriminatory acts in contravention of its terms."  *Id.*  In other words, "[w]here the statute both declares the unlawful act and specifies the civil remedies available to the aggrieved party, the aggrieved party is limited to the

6

remedy provided by the statute."  *Id.*

The Kentucky Supreme Court later revisited the *Grzyb* analysis, clarifying that the wrongful discharge claim was preempted because it was based on the same law as the sex discrimination claim, and not because both claims were predicated on the same conduct. *See Hill*, 700 S.W.2d at 401-02.  It further explained that "[t]he only 'fundamental and well-defined public policy' that [the *Grzyb* plaintiff] could articulate to meet the requirement for a wrongful discharge claim was the very same public policy embodied in the civil rights statutes of KRS chapter 344."[5]  *Id.*

In Count III of his Complaint, Sparks alleges that "Defendants violated the public policy of Kentucky in wrongfully discharging Plaintiff on the basis of his religious beliefs and/or retaliating against Plaintiff for his complaints about religious discrimination and harassment."  (Doc. # 1-1 at p. 5, ¶ 33).  Although the KCRA creates the public policy

---

5) In *Hill*, by contrast, the Kentucky Supreme Court permitted the plaintiffs' claim for common law wrongful discharge to proceed alongside their claim for unlawful retaliation in violation of KRS § 344.280.  *See* 327 S.W.3d at 412.  The plaintiffs' wrongful discharge claim was based upon allegations that they were fired for refusing to commit perjury, whereas the plaintiffs' retaliation claim under KRS § 344.280 was predicated on the plaintiffs' affirmative decision to testify on a co-worker's behalf in a discrimination case brought against the employer.  *Id.*  The court highlighted the "distinct legal nature of the two claims" by observing that:

> [i]f [the employer] had requested [the plaintiff] to testify falsely regarding her co-worker . . .and she had refused but also did not affirmatively testify on [her co-worker's] behalf, any subsequent termination would potentially give rise to a common law wrongful discharge claim but not an action under KRS Chapter 344.  Similarly, had [the employer] never approached [the plaintiff] about her testimony in the . . . matter and the only conduct at issue was her eventual testimony on [her co-worker's] behalf, a KRS Chapter 344 claim could be stated upon termination but there would be no basis for a common law wrongful discharge claim, i.e., no request for perjured testimony.

*Id.* at 423.  "Because the statutes that declare the unlawful act of perjury are not the same statutes that declare and remedy civil rights claims," the court held that "the [plaintiffs'] claims under KRS Chapter 344 do not preempt [their] common law claims for wrongful discharge based on the public policy against perjured testimony."  *Id.*

underpinning Sparks's wrongful discharge claim, he insists that his claim is not preempted because the KCRA does not declare all of the conduct at issue in this case unlawful, nor does it offer a remedy for all of the alleged conduct.  (Doc. # 6 at 2-7).  In support of this proposition, Sparks points out that KRS § 344.040(1)(a) "mentions nothing about retaliation against an employee for making an internal complaint of discrimination." (*Id.* at 4).  He further asserts that KRS § 344.280, which prohibits retaliation, does not "explicitly protect an employee from retaliation for asserting an intra-company grievance." (*Id.* at 5).

This distinction is artificial at best.  While KRS Chapter 344 may not explicitly address Sparks's precise situation, it does proscribe a wide array of practices.  From the Court's perspective, the alleged conduct would qualify as a discharge on the basis of religion, which is prohibited by KRS § 344.040(1)(a).  Similarly, the alleged conduct could qualify as retaliation for opposing a practice made unlawful by the KCRA, which is proscribed by KRS § 344.280.  Because the KCRA declares the alleged conduct unlawful and specifies the civil remedies available for such violations, Sparks's common law discharge claim is preempted by the KCRA and must be dismissed.

### 4.   *Punitive Damages Under the KCRA*

The Kentucky Supreme Court has held that punitive damages are not recoverable under the KCRA.  *McCullough*, 123 S.W.3d at 137-138 (analyzing the scope of KRS § 344.450, entitled "Civil remedies for injunction and damages"); *see also Childers Oil Co. v. Adkins*, 256 S.W.3d 19, 27 (Ky. 2008) (finding that "[t]he trial court's instruction allowing punitive damages for an action brought under KRS § 344.450 . . . was clearly erroneous" in light of *McCullough*).

8

Although Sparks requested punitive damages in his prayer for relief, he concedes that they are not recoverable under the KCRA.  (Docs. # 1-1 at 6; 6 at 7).  Instead, he attempts to tie his request for punitive damages to the common-law wrongful discharge claim plead in Count III of the Complaint.  (Doc. # 6 at 7).  Because punitive damages are recoverable for common law claims, and because Count III is a common law claim, Sparks insists that his request for punitive damages must survive.  (*Id.*).  However, the Court has already disposed of Sparks's common law claim, finding that it is preempted by the KCRA Therefore, that claim cannot serve as a basis to recover punitive damages. *See Russell v. Rhodes*, Nos. 2003-CA-000923-MR, 2004-CA-000492-MR, 2005 WL 736612 at *5 (Ky. Ct. App. Apr. 1, 2005) (explaining that dismissal of a punitive damages count is proper when the underlying tort claims have been dismissed). Sparks's request for punitive damages must be stricken from the Complaint.

## IV.  Conclusion

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)     Defendants' Motion to Dismiss (Doc. # 5) is hereby **granted**;

(2)     Count I of Plaintiff's Complaint (alleging religious discrimination in violation of the KCRA) is **dismissed** as to Defendant Thomas Kinney;

(3)     Count III of Plaintiff's Complaint (alleging wrongful discharge in violation of public policy) is **dismissed** as to both Defendants;

(4)     Plaintiff's demand for punitive damages is **stricken** from the Complaint; and

(5)     Defendants shall **file** an Answer, responding to the remaining claims in the

Complaint, **within ten (10) days of the date of entry of this Order**.

This 28th day of July, 2016.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\Opinions\Covington\2016\16-25 MOO Granting MTD.wpd

10